IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| Taurus Capital Management, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>Selective Insurance Company of South Carolina,<br><br>  Serve: Corporation Service Company<br>    135 N. Pennsylvania St., Ste. 1610<br>    Indianapolis, IN 46204<br><br>    Defendant. | Civil Action No. 3:24-CV-601-GNS |

## COMPLAINT

This is an action for breach of contract and bad faith insurance practices by Selective Insurance Company of South Carolina in delaying and denying coverage to its insured Taurus Capital Management after Taurus suffered a substantial loss during a theft at a building owned by Taurus in Louisville, Kentucky.

### The Parties

1. Taurus Capital Management, LLC ("Taurus") is a Kentucky limited liability company with its principal place of business in Louisville, Kentucky. Taurus's sole member is Amar Khadey, who resides in Louisville.

2. Selective Insurance Company of South Carolina ("Selective") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Selective issued the insurance policy at issue in this case.

### Jurisdiction and Venue

3. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

### Facts

#### The Policy

5. Taurus is in the business of commercial real estate development. Among other properties in the Louisville Metro area, Taurus owns a building located at 1031 Zorn Avenue. For several years, Galen College of Nursing was the sole tenant occupying the building. When Galen vacated the building a few years ago, Taurus decided to transform the building from commercial space into residential apartments.

6. In connection with that project, Taurus obtained insurance policy number S2586943 with Selective covering certain risks associated with the development that Taurus planned for the building. Taurus paid more than $20,000 for the policy for the policy period of September 14, 2023 to September 14, 2024. Taurus has fully complied with all the policy terms and conditions.

#### The Theft

7. In late 2022, Taurus commenced construction activities at the building. By late 2023, the building had been demoed and prepared for buildout.

8. On or about the evening of November 30, 2023 into the morning of December 1, 2023, a theft occurred at the building. Certain unknown perpetrators destroyed a lockbox on the exterior of the building that contained a key for access. Upon gaining entry, the

perpetrators stole a large amount of electrical equipment and copper wire in the building. The extensive loss completely disabled the electrical service to the building.

9. When the theft was discovered the next day, Taurus immediately notified Selective as well as the Louisville Metro police. The police visited the building, conducted a walk-through, and prepared a police report, which Taurus provided to Selective.

### Selective's evaluation of the loss

10. Taurus was contacted immediately by Selective representative Steve Sheely, a Senior Safety Management Specialist, to evaluate the incident and the loss. Mr. Sheely assigned claims adjuster Alan Kidd to Taurus's claim.

11. Within the first week of December 2023, Selective sent Mr. Kidd and electrical engineer Stephen Collings to the building to evaluate the loss in detail. At that time, on information and belief, Kidd had less than a year of experience as a claims adjuster and was not experienced in adjusting losses resulting from sizeable thefts such as the one Taurus had experienced. Collings, however, is an experienced electrical engineer with Envista Forensics in Nashville, Tennessee. Envista's website touts Mr. Collings' extensive experience assisting insurance companies in adjusting losses involving electrical systems.

12. Regardless of Mr. Kidd's lack of experience adjusting such claims, at that point Selective had all information in its possession reasonably necessary to estimate the loss. Through its representatives, adjusters, and engineers, Selective was able to confirm and identify firsthand the exact nature of the loss and the scope of the loss, including that a large amount of electrical equipment and copper wire had been stolen, and that certain areas of the building such as electrical closets and panel boxes had suffered damage.

13. Further, Selective is well-equipped to generate reasonable estimates to pay

claims based on the information Selective had in hand as early as mid-December 2023. Insurance companies like Selective utilize sophisticated software programs such as Xactimate that are capable of generating estimates for losses such as the loss suffered by Taurus.[1] In fact, Taurus has been informed by Selective that it *has* estimated the loss but has thus far failed and refused to share any of that information with Taurus or to make any offer to settle Taurus's insurance claim.

14. While awaiting an estimate of the loss from Selective, Taurus asked its own electrical contractor, Steadfast Electric, to formulate an estimate for the cost of remedying the loss. Around March 20, 2024, Taurus received an estimate from Steadfast in the amount of $436,907 which itemizes the estimated costs of its services in reasonable detail. Taurus immediately submitted the estimate to Selective.

15. In response, on April 12 Mr. Kidd sent Taurus a reservation-of-rights letter acknowledging that the loss appeared covered by Taurus's policy coverage for "direct physical loss or damage to Covered Property …." However, Mr. Kidd stated that "I do not yet know whether this claim may be covered" because he was unsure whether Taurus had provided Selective all necessary information. One piece of information Selective still purportedly needed was a "signed, sworn proof of loss" regarding the claim. This was the first time Taurus had been informed of the necessity of submitting a proof of loss. Taurus could and would have submitted a proof of loss several weeks earlier, at which time Selective could have adjusted the loss using reasonable estimates that it is capable of generating.

---

[1] Taurus does not concede that whatever estimate Selective may prepare or may have prepared using Xactimate or other claims-adjusting resources would necessarily be an acceptable estimate. Taurus makes this point, rather, to illustrate that Selective *has not even attempted* to utilize the resources available to it in order to adjust and settle its insured's claim in a reasonable good faith manner.

16. Immediately in response to Mr. Kidd's request, on April 15 Taurus submitted its proof of loss, signed and sworn by Mr. Khadey. That same day, Mr. Kidd responded and "rejected" the proof of loss because it was "not completed in its entirety." When Mr. Khadey asked for further explanation, Mr. Kidd stated on April 17 that Mr. Khadey's proof of loss had omitted the precise date of the loss (stating only that it occurred in December 2023), and had listed the value of the loss as a range of "$346,000 - $450,000" rather than a specific number.

17. At this point, it became clear to Taurus that Selective was intentionally attempting to avoid paying this claim. After all, Selective *knew* the date of the loss – December 1 – which was on the police report and which Selective had already identified itself in previous correspondence. Selective also *knew* the amount of the estimate provided by Taurus's contractor, Steadfast Electric, and had even estimated the loss itself yet refused to share or discuss that amount with Taurus. There was no legal or factual basis for Selective to reject the proof of loss, which was substantially complete and reasonably sufficient to enable Selective to adjust the loss.

18. Selective's response to Taurus's proof of claim was far worse than the proverbial "low-ball" estimate; rather, it was no offer at all. The policy contains a provision regarding "Appraisal" that anticipates the possibility that the insured and Selective would disagree regarding the amount of the loss, in which case the parties may seek an appraisal. However, by completely rejecting Taurus's proofs of claim out-of-hand and offering zero in response, Selective has frustrated and prevented Taurus from even attempting to utilize this potential solution to settle a disagreement over the amount of the claim.

19. On April 18, Mr. Khadey sent Mr. Kidd a letter explaining additional details

about the loss, many of which were not reasonably necessary to the adjustment of the claim, but which Mr. Khadey provided in an additional effort to be cooperative. In the letter, Mr. Khadey also advised Mr. Kidd that "as this is the main source of power" to the building, "we are totally in the dark." Mr. Khadey has advised Selective that the loss will cause additional damage by delaying the completion of construction, increasing the costs associated with the construction process, and delaying the process for leasing and occupation of the building. This information has not prompted Selective to attempt to adjust Taurus's claim in a reasonable and expedient manner. Selective's delays in adjusting Taurus's claim has caused and will cause substantial additional damage above and beyond simply the cost of remedying the lost equipment and wiring. In response to Taurus's letter of April 18, Mr. Kidd stated in a letter of May 6 simply that the investigation was "ongoing."

20. A few days later, Taurus received a letter from legal counsel for Selective requesting a vast amount of information, some of which had already been provided to Selective, and the rest of which was not reasonably necessary to adjust the loss. Nonetheless, over the course of the next several weeks, Taurus provided most of the requested information or, where the information did not exist, advised Selective that the information did not exist.

21. On July 2 – having rejected and ignored Taurus's original proof of loss in April – Mr. Kidd asked Taurus to submit a *new* proof of loss regarding the claim. Mr. Khadey immediately filled out and submitted the new proof of loss on behalf of Taurus, but Selective rejected it again on the basis that "we still do not agree with the costs outlined." Taurus had listed the amount of the loss as $450,000, which at that point was still based on the best information Taurus had available to it – the March 20 estimate of Steadfast. Selective did not state why it disagreed with the costs outlined. It seems as if Selective has a mysterious target

number in mind, and it will not pay Taurus's claim unless Taurus hits that number. That is not a reasonable process for an insurer to investigate and adjust an insurance claim.

22. Understandably, Taurus was growing frustrated with the lack of assistance from Selective, a company that Taurus had paid a substantial amount to provide coverage precisely in these circumstances. In response to Mr. Kidd's terse statement that the claim was rejected because "we still do not agree with the costs," Mr. Khadey stated:

> Why did you make me do this then. The cost estimate is given by the contractor and you have verified that. I had my suspicions that you [are] never going to approve this claim....Where is you[r] proof that you deny this cost estimate? I would like to see what your breakdown of equipment and labor should be. You have not provided any evidence of denying this claim.

23. Selective has continued to unreasonably fail and refuse to settle the claim through the present time. For approaching a year now, Selective has had all information reasonably necessary to settle the claim. Selective has continued to ask for pieces of information that are not reasonably necessary to adjust the loss, solely for the purpose of delay and avoidance of paying Taurus's claim.

## COUNT I
## DECLARATORY JUDGMENT

24. Plaintiff repeats the allegations set forth above as if fully set forth herein.

25. The policy is a binding contract under which Selective was paid premiums in exchange for its contractual agreement to pay Plaintiff's losses for claims covered under the Policy.

26. Plaintiff suffered a loss that is covered by the policy.

27. Selective has failed and refused to provide coverage under the policy.

28. An actual controversy exists between Plaintiff and Selective regarding the

rights, duties and liabilities under the policy, and Selective's failure and refusal to provide coverage. The controversy is of sufficient immediacy and magnitude to justify declaratory relief.

29. Pursuant to the Declaratory Judgment Act, Plaintiff seeks a judicial determination of its rights and Selective's duties under the policy, and that Selective is obligated, pursuant to the terms of the policy, to cover Plaintiff for all past and future losses relating to its claim.

30. A binding judgment concluding the controversy may be entered by the Court.

## COUNT II
## BREACH OF CONTRACT

31. Plaintiff repeats the allegations set forth above as if fully set forth herein.

32. The policy is a binding contract under which Selective was paid premiums in exchange for its contractual agreement to pay Plaintiff's losses for claims covered under the policy.

33. Plaintiff gave timely notice and has otherwise complied with all of its contractual obligations under the policy.

34. Selective has breached the insurance contract by failing and refusing to provide coverage.

35. As a result of Selective's breach of the insurance contract, Plaintiff has suffered significant damages.

36. Plaintiff's damages are ongoing.

## COUNT III
## VIOLATION OF KENTUCKY'S
## UNFAIR CLAIMS SETTLEMENT PRACTICES ACT

37. Plaintiff repeats the allegations set forth above as if fully set forth herein.

38. Selective has a duty to investigate claims in good faith and promptly pay valid claims.

39. Selective has a duty to act in good faith and to deal fairly with Plaintiff, and to attempt to effectuate a fair and reasonable settlement of Plaintiff's claim.

40. Selective has in bad faith delayed its investigation, settlement, and payment of Plaintiff's claim.

41. Selective's actions are outrageous, intentional wrongdoing, and in reckless disregard to Plaintiff's rights.

42. Selective violated the Unfair Claims Settlement Practices Act, as set forth in KRS 304.12-230 by, among other things:

   a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   b. Failing to adopt and implement reasonable standards for a prompt investigation of claims arising under insurance policies;

   c. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   d. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

9

      e.    Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

43.    As a proximate result of the aforementioned wrongful conduct of Selective, Plaintiff has suffered damages, including attorneys' fees, costs incurred, and other incidental damages.

44.    By Selective's failure to comply with to the Unfair Claims Settlement Practices Act standards and by its wanton and willful conduct in its dealings with Plaintiff, Selective has exhibited a willful and wanton disregard of the trust imputed to it inasmuch as these actions constitute oppression, fraud, and/or malice, showing such bad faith that these acts entitle Plaintiff to statutory and punitive damages and its attorneys' fees and costs incurred in bringing this action.

## COUNT IV
## VIOLATION OF KRS 304.12-235

45.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

46.    Selective failed to make a good faith attempt to settle Plaintiff's claim within thirty days of being provided notice of its claim.

47.    Selective's denial is without reasonable foundation.

48.    Plaintiff is entitled to recover attorneys' fees and costs incurred in obtaining a claim settlement or verdict, as well as interest at 12% from thirty days after the proof of claim was made to Selective until the claim is paid.

## PRAYER FOR RELIEF

WHEREFORE, Taurus respectfully requests the following relief:

  A.  Judgment in its favor and against Selective on all counts of the Complaint;

  B.  An award for compensatory damages in an amount to be determined at the trial of this cause;

  C.  An award against Selective for bad faith or fraud, including an award of compensatory and punitive damages in the maximum amount allowed by law;

  D.  An award of reasonable attorneys' fees and costs;

  E.  An award of pre-judgment and post-judgment interest, as permitted by law;

  F.  A trial by jury on all issues so triable;

  G.  Such other further relief as the Court deems just and proper; and

*s/ Michael C. Merrick*
Michael C. Merrick
Kaplan Johnson Abate & Bird LLP
710 W. Main Street, Suite 400
Louisville, KY 40202
502-242-9099
mmerrick@kaplanjohnsonlaw.com
*Counsel for Plaintiff Taurus Capital Management, LLC*